IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ALVIN L. DAVIS                                                                    PLAINTIFF
ADC #097660

v.                              No: 5:19-cv-00347 JM-PSH

ESTELLA BLAND                                                                  DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Alvin L. Davis, an inmate at the East Arkansas Regional Unit of the Arkansas Division of Correction (ADC), filed this *pro se* civil rights complaint on

November 6, 2019, relating to his medical care at the Varner Unit.[1]  *See* Doc. No. 2. Davis named Correct Care Solutions, Wellpath, and APN Estella Bland as defendants.  He brings Eighth Amendment deliberate indifference claims pursuant to 28 U.S.C. § 1983 as well as state law negligence claims.  *Id.*

On a prior motion for summary judgment, the Court determined that Davis exhausted available administrative remedies with respect to his § 1983 claims against Bland based on his April 2, 2019 encounter with her and her claimed refusal to treat him in June 2019.  Doc. Nos. 52 & 56.  Davis' other § 1983 claims against Bland and his § 1983 claims against defendants CCS and Wellpath were dismissed without prejudice due to his failure to exhaust available administrative remedies.  *Id.* The Court declined to exercise jurisdiction over Davis' pendent state law negligence claims against CCS or Wellpath and they were dismissed from this case.  *Id.*

Before the Court is a motion for summary judgment, brief-in-support, and statement of facts filed by Bland (Doc. Nos. 74-76).  Davis filed a response to Bland's motion, a brief-in-support, a statement of disputed facts, and an affidavit (Doc. Nos. 78-81).  Bland's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and Bland is entitled to judgment as a matter of law.

---

[1] Davis states he was transferred to the East Arkansas Regional Unit on February 13, 2020.  Doc. No. 15.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III. Facts

#### *Davis' Claims*

Davis alleges that he began having vision problems in his right eye in 2014, and that these problems continued through the filing of his complaint. Doc. No. 2 at 8-9. He had cataract surgery in March of 2017. *Id.* He alleges that Bland refused

to treat him on April 2, 2019, for his eye condition and accused him of faking an illness. *Id.* at 9. He states he was hospitalized at UAMS on that date for "specialized treatment for a Cornea Ulcer" in his right eye. *Id.* According to the complaint, Davis was discharged from UAMS on April 19, 2019, to the Ouachita River Correctional Unit. *Id.* He was admitted to UAMS again on April 23, 2019, and returned to the Varner Unit on June 12, 2019. *Id.* Davis alleges that Bland refused to examine him after he returned to the Varner Unit, which caused a delay in his medications being ordered and received. *Id.* Davis does not state when he received his medications.

### *Davis' Relevant Medical Records[2]*

Davis reported to the infirmary on April 2, 2019, for a complaint of right eye pain. Doc. No. 76-1 at 1. Bland noted that Davis said his eye began hurting after he was assigned to the hoe squad.[3] *Id.* Bland observed that Davis' sclera was clear on the left eye and stated that she could not examine his right eye because Davis experienced pain with the slightest touch to the upper eyelid. *Id.* She did not note whether Davis had any eyelid swelling or discharge. *Id.* She noted no tearing but noted that Davis had a bloodshot eye with a cloudy appearance of the iris. *Id.* Davis

---

[2] Bland submitted copies of Davis' medical records from April 2, 2019, through June 19, 2019 (Doc. No. 76-1).

[3] Davis disputes that his eye was injured due to dust or debris from working outside; he indicates that he was working inside on the day in question, but he lists the date as April 2, 2021. *See* Doc. No. 80 at 3; Doc. No. 81 at 4. Davis maintains his eye injury was the result of a preexisting condition due to a past eye surgery.

complained of pain but had no visual difficulty at that time. *Id.* Bland noted that he had extraction of a mature cataract in 2017. *Id.* She prescribed artificial tears and prepared an urgent consultation request for Davis to be seen at the Varner eye clinic. *Id.* at 2-3.

An optometrist examined Davis on April 4, 2019, and diagnosed him with an eye infection (purulent endophthalmitis). Doc. No. 76-1 at 4. The optometrist prescribed antibiotic eye drops and oral antibiotics and requested that Davis be referred to Ophthalmology as soon as possible. *Id.* Bland reviewed the optometrist's record and prepared another urgent consultation request that afternoon for Davis to be seen by UAMS ophthalmology. *Id.* at 5-6. Davis was taken to UAMS early the following morning. *Id.* at 7.

Davis returned to the Varner Unit from UAMS in the late afternoon of June 12, 2019. Doc. No. 76-1 at 19. He returned with the following eye prescription recommendations from UAMS: acetylcysteine (for dry eyes), fluconazole (antifungal), and polymyxin B sufl-trimethoprim (antibiotic eye drops).[4] *Id.* at 8. That same day, Bland gave verbal orders for moxifloxacin (antibiotic eye drops), acetylcysteine, polymyxin B-trimethoprim, and Natacyn (antifungal eye drop). *Id.*

---

[4] Two non-eye-related oral medications were also recommended: amlodipine (blood pressure medication) and hydrochlorothiazide (blood pressure and fluid retention medication). Doc. No. 76-1 at 8.

at 10, 19.  She authorized him to keep all but the Natacyn on person, and noted he was to receive a dose of Natacyn every six hours.  *Id.*

On June 14, 2019, Davis was examined by Dr. Smith.  Doc. No. 76-1 at 16.  Dr. Smith noted that Davis was to continue medications as entered upon arrival to the Varner Unit two days earlier, and to follow up as scheduled with the UAMS ophthalmology provider.  *Id.*  Dr. Smith added ibuprofen to Davis' medication regimen.  *Id.*

On June 17, 2019, Davis returned to UAMS for a follow-up appointment with Dr. Warner.  Doc. No. 76-1 at 14-15.  Upon his return, Bland reviewed Dr. Warner's consultation report and updated Davis' prescriptions.  *Id.* at 13, 20. Dr. Warner recommended viagamox (moxifloxacin), polytrim (polymyxin B/trimethoprim), doxycycline, vitamin C, artificial tears, and natamycin (Natacyn).  *Id.*  Bland ordered all of those medications.  *Id.* at 9-15.

### *Dr. Gary R. Kerstein's Opinion*

Dr. Gary R. Kerstein, a non-party medical doctor employed by WellPath LLC, the contracted private healthcare provider that furnishes medical services to ADC inmates, reviewed Davis' medical records from April 2, 2019 until June 19, 2019 (Doc. No. 76-1).  Dr. Kerstein prepared a declaration in support of Bland's motion for summary judgment (Doc. No. 76-2).  Dr. Kerstein was asked to provide his professional medical opinion, utilizing his medical judgment, as to whether Bland

provided adequate medical care to Davis. His opinions, stated under oath to a reasonable degree of medical certainty, are based upon his review of the records and his education, training, and experience. Dr. Kerstein reviewed each of Davis' claims and reached the following conclusions with respect to each claim.

To Dr. Kerstein, the notation on Davis' April 2, 2019 medical record that Davis had been working hoe squad indicates that the cause of his eye injury was likely irritation from some type of dust or debris from working outside, resulting in a corneal abrasion from rubbing the eye. Doc. No. 76-2 at 1. Dr. Kerstein opined that Bland appropriately prepared a consultation request for Davis to be seen urgently on site by the optometrist, which was scheduled to occur April 4. *Id.* at 1-2. In Dr. Kerstein's medical opinion, Bland did not do anything wrong on April 2, 2019. *Id.* He opined that there was nothing to suggest that Davis needed to go to the hospital on April 2, and that it was appropriate for Bland to request an urgent optometry consult on-site. *Id.* at 2. Although Dr. Kerstein was not asked to evaluate Bland's conduct on April 4 (because there is no pending claim based on her behavior that day), he opined that she did the appropriate thing by immediately entering an urgent ophthalmology consultation request, which resulted in the patient being seen at UAMS the following day. *Id.* at 2.

Regarding Bland's treatment of Davis following his return to the Varner Unit on June 12, 2019, Dr. Kerstein explained that Bland prescribed two of the same

medications recommended and two appropriate substitute medications (which the ophthalmologist actually prescribed the following week, per Doc. No. 76-1 at 20). Doc. No. 76-2 at 2-3. In Dr. Kerstein's medical opinion, Bland appropriately utilized her medical judgment to enter orders on June 12, 2019, for medications comparable or identical to those recommended by the ophthalmologist. *Id.* at 3. Dr. Kerstein opined that there was no need for Bland to have a face-to-face encounter with Davis because her orders were sufficient to ensure continuity of care. *Id.* at 3

In Dr. Kerstein's opinion, to a reasonable degree of medical certainty, there is no evidence of any level of indifference on Bland's part toward Davis' medical needs; rather, the records document that Davis had appropriate access to healthcare and that Bland provided him with appropriate treatment for his eye condition in April and in June that was within the standard of care. *Id.*

## IV. Analysis

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976). To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official

knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

The undisputed material evidence in the record concerning the April 2 visit does not establish that Bland was deliberately indifferent to Davis' serious medical needs. Bland documented Davis' complaints of eye pain. She noted that he had a cataract removed in 2017. She described the appearance of Davis' eye in the chart. And she requested an optometrist consultation on an **urgent** basis.[5] Davis was seen two days later by an optometrist who diagnosed an eye infection, ordered medications, and recommended that he be seen by an ophthalmologist as soon as possible. Of note, the optometrist did not order emergent care at a hospital. Bland then referred him, again on an **urgent** basis, for an outside consultation by an ophthalmologist. He was seen the next day and admitted to the hospital. Essentially,

---

[5] Davis maintains that an optometrist is only qualified to prescribe eyeglasses. Doc. No. 78. The Court takes judicial notice pursuant to Fed. R. Civ. P. 201 that optometrists are able to diagnose and treat some eye conditions. *See* https://my.clevelandclinic.org/health/articles/8607-eye-care-specialists ("Optometrists are doctors of optometry (OD). They are trained to examine, diagnose, treat, and manage some diseases and disorders of the visual system.").

Bland evaluated Davis' condition on April 2 and thereafter took action for him to be seen by specialists on an urgent basis. These actions simply do not evidence deliberate indifference to an inmate's serious medical needs. Davis' opinion that he needed emergency treatment on April 2 constitutes a disagreement with Bland's treatment decisions that fails to rise to the level of a constitutional violation. And at worst, Bland's treatment decisions on that date could constitute negligence, which cannot support a constitutional violation.

Davis' second claim against Bland is that she should have evaluated him when he was returned to Varner on June 12 following his second hospitalization. He asserts that Bland's failure to see him that day resulted in a significant delay in his medications being ordered and received. This claim is not borne out by Davis' medical records. Those records show that Davis was returned to Varner with medication recommendations, and on that same day, Bland entered orders for those exact or equivalent medications. *See* Doc. No. 76-1 at 8, 10 & 19; Doc. No. 76-2 at 2. Davis' records also show that Bland ordered the medications prescribed by Dr. Warner after Davis returned from a follow-up appointment on June 17, 2019. *See* Doc. No. 76-1 at 13 & 20. Additionally, the records document that Davis received Natacyn in the infirmary before his follow-up appointment. Doc. No. 76-1 at 11-19. A record on June 17 also indicates that Davis had possession of his other medications. *See id.* at 15 (Nurse Kathy Scott noted that she told Davis to make sure

he carried his eye drops with him when he returned to UAMS for follow-up appointment). To the extent that any of the medications ordered by Bland on June 12 were not made available to Davis immediately, the record before the Court does not establish that any delay was due to actions on the part of Bland. Davis' records simply do not support his claim that Bland ignored or disregarded UAMS's medication recommendations, or that she took steps to delay the ordering and receipt of those medications with deliberate indifference to Davis' serious medical needs.

Finally, Davis has not produced evidence that emergent hospital treatment on April 2 instead of on April 5 would have lessened any injury or reduced his lengthy hospitalization. *See Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (holding that an inmate must produce verifying medical evidence to show the detrimental effect of a delay in medical treatment to avoid summary judgment).[6]

---

[6] Davis complains that Bland did not submit copies of his medical records from UAMS with her motion, but it was his responsibility to obtain those records if he believed they supported his case. *See* Fed. R. Civ. P. 45 (allowing parties to subpoena non-parties to produce records). *See also Burgs v. Sissel,* 745 F.2d 526, 528 (8th Cir. 1984) ("Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law.") (citing *Faretta v. California,* 422 U.S. 806, 834–35 n. 46 (1975)). Davis also argues that trial testimony from the physicians that treated him at UAMS might prove that he suffered some harm due to Bland's actions. Yet, Davis has not obtained the records of those physicians and he has not sought to obtain testimony from them in the more than 3 years that this case has been pending. His allegations that those physicians might support an injury caused by delay are speculative at best.

## V.  Conclusion

The undisputed facts establish as a matter of law that Bland's treatment of Davis does not evidence deliberate indifference to his serious medical needs.  The undersigned therefore recommends that Bland's motion for summary judgment (Doc. No. 74) be granted.  Davis' pending claims of deliberate indifference against Bland should be dismissed with prejudice.  Additionally, the undersigned recommends that the Court decline to exercise jurisdiction over Davis' pendent state law negligence claims against Bland.[7]

SO RECOMMENDED this 30th day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] *See ACLU v. City of Florissant,* 186 F.3d 1095, 1098-99 (8th Cir. 1999) ("[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law . . . as a matter of comity.").  *See also Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) ("The judicial resources of the federal courts are sparse compared to the states. We stress the need to exercise judicial restraint and avoid state law issues wherever possible.").